# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DARRELL SEAY,

      Defendant.

Case No. 1:20-cr-67
(Civil Case No. 1:22-cv-269)
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Darrell Seay, a federal prisoner, mounts a pro se collateral attack under 28 U.S.C. § 2255. In it, Seay seeks to undo the conviction and the 240-month sentence that he received based on his plea of guilty to distributing a controlled substance resulting in serious bodily injury. Note three things at the outset—the sentence he received is the statutory *minimum* for the crime to which he pled guilty; he *agreed* to this sentence in his Rule 11(c)(1)(C) plea agreement; and, in exchange for his plea, the government dismissed other charges, one of which would have called for an additional *mandatory* sixty months of imprisonment.

Against that backdrop, Seay's collateral attack appears to rest on two grounds. He claims that (1) he entered his plea without knowing an essential element of the crime to which he was pleading guilty, and (2) he received ineffective assistance of counsel. Regarding the first, he claims that he did not know that the government would have to prove, at trial, that the drugs he provided *caused* the serious bodily injury alleged in the Indictment. And regarding the second, he faults his attorney for allegedly failing to let him know that fact and for related matters.

For reasons detailed below, neither claim has merit. So the Court **DENIES** his Motion to Vacate, Set Aside or Correct his Sentence (Doc. 31) and **TERMINATES** this action.

## BACKGROUND

Darrell Seay pled guilty to one count of Distribution of a Controlled Substance Resulting in Serious Bodily Injury in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). That charge was contained in Count One of the Indictment. (Doc. 3). He pled guilty to that charge pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C). (Doc. 18, #45). The plea agreement included an "agreed sentencing disposition" of 240 months, followed by a term of supervised release to be determined by the Court. (*Id.* at #47). That 20-year sentence was the statutory minimum sentence that he could receive for the count to which he pled guilty. *See* 21 U.S.C. § 814(b)(1)(C) ("[I]f death or serious bodily injury results from the use of such substance [the defendant] shall be sentenced to a term of imprisonment of not less than twenty years or more than life.").

In exchange for Seay agreeing to plead guilty to that offense, the government agreed that it would "dismiss[] … any remaining counts of the Indictment against the Defendant at the entry of the final judgment." (Doc. 18, #48). This included two more counts of distribution resulting in serious bodily injury (Counts 2 and 3); two further fentanyl distribution charges (Counts 4 and 5); two counts of possession with intent to distribute (Counts 6 and 7); and a count under 18 U.S.C. § 924(c) for possessing a firearm in furtherance of a drug crime (Count 8). (Doc. 3, #12–15). Many

2

of these counts also had statutory minimum sentences associated with them. And the § 924(c) charge would have required a minimum sentence of sixty months to run *consecutive to* any underlying sentence for the drug crime. *See* 18 U.S.C. § 924(c). True to its word, after entry of judgment, the government moved for, and the Court granted, dismissal of those counts. (*See* 7/8/21 Order, Doc. 28 (dismissing Counts 2–8)).

Seay's plea agreement also contained two waivers worth noting. First, Seay waived his right to appeal his conviction or sentence, "except if the sentence imposed exceeds the statutory maximum." (Doc. 18, #48). Second, and more relevant here, Seay waived his right to collaterally attack his conviction or sentence "such as by way of a motion brought under 28 U.S.C. § 2255 or 18 U.S.C. § 3582." (*Id.*). The sole limitation on these waivers was that they "shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct." (*Id.*).

The plea agreement also includes an Attachment A that is labeled "Statement of Facts." It sets forth various facts about Seay's criminal activity. These facts include Seay conceding that he provided a heroin/fentanyl mix that resulted in three individuals overdosing and suffering respiratory failure, although medical professionals managed to revive all three. (*Id.* at #51). Besides signing the plea agreement itself, Seay separately signed the Statement of Facts. In doing so, he asserted that he had "read the statement of facts" and "carefully reviewed it with [his] attorney," and that "it is true and correct." (*Id.*)

3

A little over a month after the parties filed the plea agreement, the Court held a plea hearing. There, the Court placed Seay under oath. During that hearing, the Court advised Seay of each of the elements that the government would need to prove at trial, including informing him that the government would need to prove that the drugs he distributed caused the serious bodily injury claimed in Count 1 of the Indictment. (Doc. 30, #184–85). The Court also explained the waiver of appellate and collateral attack rights that Seay's plea agreement included. (*Id.* at #202). As the Court went through the plea agreement with Seay, he acknowledged that he understood each of the provisions that the Court discussed with him.

Of particular importance to this motion, the Court also had the government's attorney read the Statement of Facts into the record. (*Id.* at #210–11). While the government attorney did so, Seay followed along on his own copy of the agreement. Seay then admitted, still under oath, that the facts were accurate, and that he had in fact engaged in the conduct attributed to him in the Statement of Facts. (*Id.* at #211). The Court accepted his plea, but deferred acceptance of the plea agreement itself pending completion and review of the Presentence Investigation Report. (*Id.* at #214–15).

The Probation Office filed a final version of the Presentence Investigation Report in June 2021. (Doc. 22). Based on interviews with Seay and the victims, the Report provided facts further detailing how Seay's drugs caused serious bodily injuries to victims. (*Id.* at #92). The Report also recommended applying a dangerous weapons enhancement in calculating the offense level. (*Id.* at #114). Seay's counsel

4

objected to that enhancement, but the Probation Office still recommended it was appropriate on the facts here. (*Id.*).

The Court sentenced Seay just under a month later. At the sentencing hearing, the Court acknowledged that Seay objected to the two-level enhancement for dangerous weapons that the PSR recommended. But the Court overruled that objection. (Doc. 29, #151).

In any event, the dispute over the two-level enhancement was irrelevant, as the Court determined that it would accept that proposed Rule 11(c)(1)(C) plea agreement. (*Id.* at #165). That plea agreement called for an "agreed sentencing disposition" of 240 months, which as noted above is the statutory minimum for the crime. The Court further sentenced Seay to three years of supervised release, once again the statutory minimum term for the crime at issue. (*Id.* at #164). After imposing the agreed sentence, the Court also explained to Seay how he might go about appealing that sentence. (*Id.* at #168–69). Seay did not file a notice of appeal.

Although Seay did not appeal, he now seeks to collaterally attack his conviction and sentence. (*See* Doc. 31). In the form pleading that he filled out, he lists six grounds, all allegedly based on ineffective assistance of counsel: (1) failure to challenge the applicability of the serious bodily injury enhancement; (2) failure to object to the 2-level weapon enhancement; (3) failure to investigate the facts of the defendant's case; (4) failure to explain the but-for causation requirement for the serious bodily injury element; (5) failure to challenge the sufficiency of the evidence; and (6) failure to consult the defendant regarding appeal. (*Id.* at #222–29). In his

5

memorandum in support, though, he also appears to add a claim beyond ineffective assistance—that his plea was not knowing in that he was unaware of the but-for causation requirement. (Doc. 31, #245–46). The government opposes this motion. (Doc. 34). The matter is now ripe for review.

## LEGAL STANDARDS

"A petitioner seeking § 2255 relief 'must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (quoting *Harris v. United States*, 19 F.4th 863, 866 (6th Cir. 2021). When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). If a prisoner creates at least a genuine dispute on that front, he is entitled to a hearing on such a motion to flesh out his claims. That is not so, however, when the prisoner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

As a general matter, courts do not entertain § 2255 motions when prisoners waived their right to collaterally attack their sentences, as Seay did here. *Davila v. United States*, 258 F.3d 448, 450–51 (6th Cir. 2001). But courts do not enforce those waivers when the attack goes to the "very validity of a guilty plea." *In re Acosta*, 480

6

F.3d 421, 422 (6th Cir. 2007). This includes cases "where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel." *Id.* After all, "it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself." *Id.* (citing *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)). Moreover, as is often the case, the waiver of collateral attack contained in the plea agreement here specifically allows the defendant to pursue claims of ineffective assistance of counsel. That said, statements the defendant made at a plea colloquy can "constitute a formidable barrier in any subsequent collateral proceedings," depending, of course, on the specific attack raised. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

## LAW AND ANALYSIS

Seay waived his right to collaterally attack his sentence in his plea agreement. (Doc. 18, #48). But Seay broadly offers two challenges that go to the heart of the validity of that agreement. He says:

1. He did not knowingly agree to plead guilty; and
2. His counsel was ineffective for various reasons.

(*See generally* Doc. 31). As noted, Sixth Circuit case law holds that the collateral-attack waiver in his plea agreement does not bar the first, and the waiver here specifically excludes the second from coverage. Thus, the Court will consider the merits of those claims. In doing so, however, the Court finds no need to hold a hearing on his motion. That is because both challenges fail, as the record contradicts them.

7

The Court starts its analysis with Seay's attack on whether his plea was knowing, and then considers the ineffective assistance claims.

## A.      Seay Knowingly Agreed To Plead Guilty.

A defendant knowingly agrees to plead guilty when "the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (quoting *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005)). Separately, the Supreme Court has held that "in common talk," phrases like "because," "results from," "based on," and "by reason of" all mean a but-for causal relationship. *Burrage v. United States*, 571 U.S. 204, 213–14 (2014).

Seay asserts that he did not knowingly agree to plead guilty because he "never received notice of an essential element," namely the "'but-for causation' [requirement] of the death-results/Serious Bodily Injury enhancement under 21 U.S.C.S. § 841(b)(1)(C)." (Doc. 31, #245). He says that "a subsequent Supreme Court decision [namely, *Burrage*] interpreted the statute to require proof of [that] element."[1] (*Id.*) (cleaned up). According to Seay, "his attorney and the district Court" failed to inform him, before he pled guilty, that the government would need to establish such but-for causation. (*Id.*).

---

[1] Throughout his motion, Seay's arguments relating to *Burrage* seem to assume that the case was decided after his sentencing (or at least after the criminal conduct at issue occurred). For example, he includes an extended argument about why *Burrage* applies retroactively. (Doc. 31, #237). But the Supreme Court decided *Burrage* in 2014, while Seay's crime and sentencing here both occurred years after that. Ultimately, this does not affect the Court's decision in any way.

8

There is a major problem with Seay's claim. Even if his counsel had failed to inform him that the government would need to establish that element if the matter went to trial, the Court itself informed him of that very fact at his plea hearing:

> **THE COURT:** So what we're discussing now is what the government would need to prove if this matter were to go to trial.
>
> **THE DEFENDANT:** Okay. I understand.
>
> **THE COURT:** Because if you think that there's any of these elements that the government couldn't prove, then you may want to reconsider your decision to plea.
>
> … [discussion of first two elements omitted]
>
> **THE COURT:** And third, the government would need to prove that serious bodily injuries resulted to victims identified *as a result of* the controlled substance distributed. Do you understand that?
>
> **THE DEFENDANT:** Yes, Your Honor.

(Doc. 30, #184–85) (emphasis added). The Court's colloquy with Seay specifically clarified that the injuries the victims suffered must have occurred "*as a result of*" the drugs he distributed. The phrase "as a result of" falls within the class of phrases like "because," "results from," "based on," and "by reason of," that *Burrage* identified as carrying a but-for causation connotation in ordinary parlance. 571 U.S. at 213–14. Because the Court informed Seay that a but-for causation standard applies, and did so before accepting his plea, Seay cannot now assert, as a basis for challenging whether his plea was knowing, that he was unaware of this element.

Moreover, the facts to which Seay admitted also showed that but-for causation was present here. After the Court told Seay that the government would need to prove that the injuries at issue occurred "as a result of" the controlled substances Seay

9

distributed, the Court also addressed whether the facts here would meet that element. The Court had the government attorney read aloud in open court the Statement of Facts attached to the plea agreement. In that statement, Seay acknowledged that he distributed heroin and fentanyl to the three victims, including C.S., the victim named in Count 1. (Doc. 18, #51). Second, he admits that the drugs he distributed "resulted in all three individuals' drug overdose." (*Id.*). Third, he admitted that during the overdose, the victims "all lost consciousness, and suffered the failure of their respiratory systems prior to revival by medical professionals." (*Id.*). Seay further signed the document, admitting that these facts were "true and correct." (*Id.*). He also confirmed it again, under oath, during his plea colloquy. (Doc. 30, #212). And the PSR relayed similar facts—according to the victims, Seay sold drugs to them, which they used. (Doc. 22, #92). "Immediately after consuming the drugs, all three individuals overdosed." (*Id.*). When neighbors and later emergency services found them, they were unresponsive. (*Id.*). Emergency services gave them Narcan and took them to the hospital. (*Id.*). These facts support a determination that the loss of consciousness, and ensuing respiratory failure, was as a result of the drugs that Seay provided. That suffices to show the required but-for causation.

While it is unclear from his filings, perhaps Seay is instead arguing that respiratory failure from which a person is revived does not constitute "serious bodily injury." To be fair, it does not appear that the Sixth Circuit has directly addressed the threshold showing necessary to satisfy that term. Other courts have, though, and they concluded that "an overdose posing a serious risk of death without medical

10

intervention constitutes serious bodily injury." *United States v. Coles*, No. 1:16-cr-212, 2022 WL 17405830 (M.D. Penn. Dec. 2, 2022) (citing *United States v. Piaquadio*, No. 4:15-cr-249, 2019 WL 3337063, at *5 (M.D. Penn. July 25, 2019)); *see also United States v. Seals*, 915 F.3d 1203, 1206 (8th Cir. 2019); *United States v. Lewis*, 895 F.3d 1004, 1009–10 (8th Cir. 2018). That approach to serious bodily injury makes sense. An injury sufficient to create a serious risk that a person will die, unless fortunate enough to receive emergency medical treatment, strikes the Court as "serious." And, assuming that is the standard, it is met here. If a person's respiratory system fails, there can be little doubt that they bear a "serious risk of death without medical intervention."

In short, Seay admitted, under oath: (1) that he knew that the government needed to establish but-for causation, and (2) to facts sufficient to show that the drugs he distributed were the but-for cause of the serious bodily injury set forth in Count 1. That suffices in the Court's view to show that Seay's plea was knowing and valid.

**B.     Seay's Counsel Was Not Ineffective.**

That leaves Seay's ineffective assistance claims. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner claiming ineffective assistance of counsel must prove:

1.     that his counsel's performance was deficient, *and*

2.     that he suffered prejudice as a result.

11

*Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (citing *Strickland*, 466 U.S. at 687); *see also Sylvester v. United States*, 868 F.3d 503, 509 (6th Cir. 2017) (applying *Strickland* to a § 2255 motion).

To show the first—deficient performance—the prisoner must show that his counsel's representation fell below the "wide range of reasonable professional assistance" and was riddled with "errors so serious that [his] counsel was not functioning as the counsel guaranteed [to] the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 687, 689) (internal quotation marks omitted).

To show the second—prejudice—the prisoner must "demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 104 (citing *Strickland*, 466 U.S. at 693, 694) (internal quotation marks omitted).

In trying to make the necessary showings here, and in particular the prejudice showing, Seay starts from a tough spot. As noted above, he admitted, under oath, to facts sufficient to establish his guilt of the crime of distributing controlled substances resulting in a serious bodily injury. The statutory *minimum* sentence for that crime is twenty years—the sentence that he received here. Thus, unless the alleged ineffective assistance somehow led to him wrongly pleading guilty to that crime, it could not have resulted in any prejudice to him. That said, Seay offers six examples[2]

---

[2] The Court merges these six instances into five categories.

of conduct that he argues constitute ineffective assistance. Whether considered alone or in combination, none of them do.

### 1. The failure to challenge the "serious bodily injury" enhancement in 21 U.S.C. § 841(b)(1)(C).

Seay first claims that his counsel should have challenged the serious bodily injury enhancement under 21 U.S.C. § 841(b)(1)(C). (Doc. 31, #222). But he cannot establish deficient performance for that claim.

As noted above, there is perhaps some question about what qualifies as a "serious bodily injury" under this statute. But an attorney need not raise every non-frivolous issue to meet the threshold for effectiveness. *See Wood v. Morrison*, No. 20-1957, 2021 WL 1327841, at *4 (6th Cir. Jan. 11, 2021) ("An attorney is not required 'to raise every non-frivolous issue on appeal.'" (quoting *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003))). And, more to the point, raising that issue here would have come at the potential for considerable cost. The government agreed to *dismiss* other charges, many of which carried their own statutory minimums, in exchange for a guilty plea. Given the facts here, and the likelihood—or perhaps strong likelihood—that a court would find that an overdose resulting in respiratory failure met the definition of "serious bodily injury," that Court cannot say that counsel was constitutionally deficient in choosing not to press that argument.

### 2. The failure to challenge the "dangerous weapon" penalty enhancement.

Seay next says that his counsel was deficient in failing to challenge the application of the "dangerous weapon" penalty enhancement under U.S.S.G § 2D1.1(b)(1). (Doc. 31, #223). Two problems with that.

First, his counsel did, in fact, object to the PSR's application of the enhancement. (Doc. 22, #114). Indeed, at the sentencing hearing, the Court acknowledged the objection before overruling it. (Doc. 29, #151). Seay perhaps could have appealed the Court's denial of the objection (of course, the appeal waiver may have proven problematic had he done so), but Seay cannot claim that his counsel was deficient for failing to raise the issue, as his counsel did so.

Second, the enhancement in no way changed the sentence that Seay received here. At the risk of needless repetition, Seay received the lowest sentence that statute allows for the crime he committed. Thus, the enhancement does not increase his period of incarceration (or supervised release) by even a single day. That means Seay suffered no prejudice in connection with his counsel's handling of this issue.

### 3. The failure to investigate the facts of Seay's case and challenge the sufficiency of the government's evidence.

Seay next claims his counsel was ineffective for failing to investigate the facts of his case (Ground Three) or failing to challenge the sufficiency of the evidence (Ground Five). (Doc. 31, #225, 228). As both challenge the evidence, the Court considers them together, and the Court concludes Seay cannot show prejudice for either.

As a general matter, a petitioner's evidentiary challenges fail when he has "expressly admitted the elements of the offense in his plea agreement and in the agreed factual basis filed in support of the guilty plea." *Mitchell v. United States*, Nos. 2:04-cr-02, 2:05-cv-274, 2007 WL 325762, at *3 (E.D. Tenn. Jan. 31, 2007). That makes sense. Once the petitioner *admits* to facts showing that the crime occurred, what the government could or could not prove absent those admissions, or what other facts may have arisen had defense counsel undertaken further investigation, is simply irrelevant. It is the petitioner's own admissions that establish his guilt.

Here, for example, Seay says his counsel should have:

- moved to suppress toxicology reports detailing the drugs taken by the victims
- moved to retain "an expert medical examiner," and
- conducted an "investigation into the absence of medical evidence" for Seay's drugs being the cause of injury to the victims.

(Doc. 31, #225). And he more generally claims that his counsel should have argued that the evidence (presumably apart from his admissions) does not support a conviction. (*Id.* at #228).

The problem, as noted, is that Seay admitted to facts in his plea which support a finding of guilt. This provides an independent basis for a finding of guilt beyond any of the evidence that Seay refers to above. Once Seay pled, what the government could have proven at trial, or what evidence his counsel should have put on, just doesn't matter. In short, any "ineffectiveness" on this front did not prejudice him.[3]

---

[3] To the extent that Seay is instead seeking to press a sufficiency-of-the-evidence claim *apart from* any alleged ineffective assistance of counsel claim, that fails for a different reason. In particular, it is well settled that a defendant cannot use a motion under § 2255 to challenge

15

### 4. The failure to explain but-for causation before advising Seay to plead guilty.

Seay next complains that his counsel failed to explain the but-for causation requirement for the "serious bodily injury" enhancement. (Doc. 31, #226). He cannot show prejudice for this claim, though.

As described earlier, whatever his counsel may have told him, the Court specifically ensured that Seay understood this element at his plea colloquy. Indeed, the Court informed Seay that the reason the Court was instructing him on the elements was to ensure that Seay knew what the government would need to prove to secure a conviction. And, having told him that, the Court emphasized to Seay that the government would need to prove at trial that the alleged victims suffered serious bodily injuries "*as a result of* the controlled substance distributed." (Doc. 30, #184–85) (emphasis added). Seay agreed, under oath, that he understood this. (*Id.* at #185). Given that testimony, even if he is correct that his attorney failed to explain that element to him (and he has nothing beyond his own self-serving statement on that front), that does not "undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694). Thus, there is no prejudice and therefore no ineffective assistance claim here.

### 5. The failure to consult Seay about a direct appeal.

Finally, Seay complains that his counsel failed to consult him about a direct appeal—specifically, he "was not made aware of any options that a direct appeal had

---

the sufficiency of the evidence. *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) ("[T]he sufficiency of the evidence to support a conviction may not be collaterally reviewed on a § 2255 proceeding.").

16

to offer, nor knowledge of what issues could or could not be raised on appeal." (Doc. 31, #228). Even assuming that is true, given his admissions, the failure to appeal could not have prejudiced him in any way. Highlighting that point, beyond asserting that his attorney "failed to consult" with him, Seay suggests no even potentially meritorious issues that he believes he could have raised on such an appeal. Nor can the Court imagine what they would have been. At the risk of redundancy, the facts to which he admitted show that the crime to which he pled occurred, and he received the statutory minimum sentence for that offense. There are no plausible grounds on which he could have appealed.

Even if there were, the plea agreement contained an appeal waiver. So without some basis for challenging the plea agreement itself, all of which the Court rejected above, that appeal waiver would bar any appeal here. Thus, once again, any failure to consult about that appeal did not prejudice Seay. And, without prejudice, Seay lacks an ineffective assistance of counsel claim.

## CONCLUSION

For the above reasons, Seay's efforts to collaterally attack his conviction and sentence fail. Thus, the Court **DENIES** Seay's Motion (Doc. 31). The Court further directs the Clerk to **ENTER JUDGMENT** consistent with this Opinion and **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

January 12, 2023
**DATE**                                   **DOUGLAS R. COLE**
                                           **UNITED STATES DISTRICT JUDGE**